UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MARCUS DEMON HILL,

                    Petitioner,                    Case No. 1:16-cv-408

v.                                                 Honorable Janet T. Neff

PAUL KLEE,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Petitioner Marcus Demon Hill is presently incarcerated with the Michigan Department of

Corrections at the Gus Harrison Correctional Facility. Petitioner is serving terms of life

imprisonment without parole for first-degree murder, MICH. COMP. L. § 750.316(1)(b); 23 years,

9 months to 50 years for torture, MICH. COMP. L. § 750.85; and 10 to 15 years for first-degree child

abuse, MICH. COMP. L. § 750.136b(2). The Ingham County Circuit Court imposed those sentences

on June 5, 2013, after a jury convicted Petitioner of one count each of first-degree murder, torture,

and first-degree child abuse. In his *pro se* petition, Petitioner raises five grounds for relief, as

follows:

> I.    DID THE ERRONEOUS DECISION OF THE TRIAL COURT JUDGE
> TO ALLOW THE PROSECUTION TO PRESENT EVIDENCE OF THE
> CODEFENDANT'S STATEMENT REGARDING THE DEFENDANT-
> APPELLANT'S ALLEGED ASSAULT UPON THE VICTIM -- MADE TO AN
> EMERGENCY ROOM PHYSICIAN -- AS A BUSINESS RECORD, VIOLATED
> THE SIXTH AMENDMENT'S CONFRONTATION CLAUSE?
>
> II.   DID THE TRIAL COURT JUDGE ABUSE HER DISCRETION WHEN
> SHE ADMITTED A STATEMENT MADE BY THE TRAUMATIZED THREE
> YEAR OLD SISTER OF THE VICTIM EIGHT DAYS AFTER THE INCIDENT

-- WHICH INCULPATED THE DEFENDANT-APPELLANT -- AS AN EXCITED UTTERANCE?

III.     WAS THE DEFENDANT DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHERE COUNSEL FAILED TO PRESENT EXCULPATORY EVIDENCE TO THE WITNESS, FAILED TO OBJECT TO PREJUDICIAL TESTIMONY, AND FAILED TO SUBJECT THE PROSECUTOR'S CASE TO ADVERSARIAL TESTING, WHICH AMOUNTED TO A DENIAL OF THE DEFENDANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW, A FAIR TRIAL, AND EFFECTIVE ASSISTANCE OF COUNSEL, U.S. CONST. AMENDS. V, VI, XIV?

IV.     WAS THE DEFENDANT DENIED HIS STATE AND FEDERAL CONSTITUTIONAL DUE PROCESS RIGHT TO A FAIR TRIAL BY THE ADMISSION OF EVIDENCE OF DEFENDANT'S BAD CHARACTER, OF THE MOTHER'S GOOD CHARACTER, AND OF PRIOR INJURIES TO THE BABY, AND BY THE PROSECUTOR'S MISCONDUCT IN URGING JURORS TO CONVICT ON THIS BASIS?

V.     WAS THE DEFENDANT DENIED HIS STATE AND FEDERAL CONSTITUTIONAL DUE PROCESS RIGHT TO A FAIR TRIAL WHERE THE TRIAL COURT ALLOWED THE INTRODUCTION OF PRIOR ACTS OF DOMESTIC VIOLENCE THAT WERE IRRELEVANT AND PREJUDICIAL?

(Pet., Ex. C, ECF No.1-1, PageID.17-20.)  Respondent has filed an answer to the petition (ECF No. 7) stating that the grounds should be denied because they not cognizable on habeas review or mertiless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

### Discussion

### I.     Factual allegations

Early in the afternoon on April 30, 2012, Mercedes Kemp, along with her four-year-old daughter TK, brought her two-year-old son BK to the emergency room at McLaren Greater Hospital in Lansing, Michigan.  (Trial Tr. III, ECF No. 8-11, PageID.741-746.)  Ms. Kemp reported to the emergency room physician, Dr. Jane Sbalchiero, that her live-in boyfriend,

Petitioner Marcus Demon Hill had beaten BK. (*Id*., PageID.748.) Dr. Sbalchiero testified that BK was dead when he arrived at the hospital. (Trial Tr. III, ECF No. 8-11, PageID.742, 746.) Nonetheless, Dr. Sbalchiero and her team worked fervently to resuscitate BK. (*Id*., PageID.742-743.) After about forty-five minutes, however, they had not succeeded. (*Id*.) BK was declared dead at 1:45 p.m. on April 30, 2012. (*Id*., PageID.745.)

Dr. Joyce DeJong performed an autopsy on BK the next day. (*Id*., PageID.725.) Dr. DeJong identified a number of recent injuries that likely caused BK's death as well as a number of injuries that were healing or recently healed at the time BK died. (*Id*., PageID.725-738.)

About one week later, in a conversation with TK's foster care provider, TK stated that "a bad man hurt her brother." (Trial Tr. VII, ECF No. 8-15, PageID.904.) When asked to identify the bad man, TK replied "Marcus." (*Id*.)

Ms. Kemp was tried and convicted on one count each of second-degree murder, torture, and first-degree child abuse relating to BK just a few weeks before Petitioner was tried. *See People v. Kemp*, No. 316254, 2014 WL 6778941 (Mich. Ct. App. Dec. 2, 2014). At Petitioner's trial, the prosecutor argued that Ms. Kemp and Petitioner were both culpable for the abuse and murder of BK. Through the testimony of the father of BK and TK, Ms. Kemp's friends, her family, and her neighbors, the prosecutor painted a picture of a single mom whose approach to parenting her children changed dramatically when Petitioner moved into her home in December of 2011. Petitioner sought to impose discipline and control. Ms. Kemp welcomed the change. At Petitioner's behest, Ms. Kemp isolated herself from friends and family. Petitioner focused his efforts to establish control over the children on their potty training. Accidents were punished by physical abuse. On the morning of April 30, 2012, the physical abuse was so severe that it resulted in BK's death.

Other than Ms. Kemp's statements to the ER doctor and TK's statement to her foster mother, however, there was no evidence establishing that the physical abuse occurred at the hands of Petitioner, as opposed to Ms. Kemp. The absence of such evidence was the foundation for Petitioner's defense. It did not prove successful.

Petitioner, with the assistance of counsel, directly appealed his convictions to the Michigan Court of Appeals. The brief filed by Petitioner's counsel took issue with the admission of the hearsay statements of Ms. Kemp and TK as contrary to the Rules of Evidence and violative of Petitioner's Sixth Amendment right to confront the witnesses against him (habeas issues I and II).

Petitioner supplemented counsel's effort with a Standard 4 brief blaming his trial counsel, the prosecutor, and the trial court for his convictions.[1] In Petitioner's Standard 4 brief, he contends that his trial counsel rendered ineffective assistance (habeas issue III) because counsel: (1) failed to object to the admission of Petitioner's statements to law enforcement; (2) failed to object to the introduction of photographs and testimony regarding Petitioner's assault of Ms. Kemp; (3) failed to call Ms. Kemp as a witness or admit into evidence a handwritten letter purportedly authored by Ms. Kemp wherein she confessed to killing BK by herself after Petitioner broke up with her, she became high on cocaine, and BK wet himself.[2] Petitioner also argued that his trial was rendered unfair by prosecutorial misconduct (habeas issue IV) where the prosecutor introduced improper testimony (1) regarding Petitioner's assault of Ms. Kemp; (2) regarding Ms. Kemp's good character as a parent; (3) regarding injuries to the victim that were not consistent

---

[1] Standard 4 permits an appellant to file a brief *in propria persona* covering issues the appellant wants to raise on appeal even though his counsel does not. Mich. Admin. Order No. 2004-6.

[2] The letter was not part of the trial court record; however, Petitioner attached it to his Standard 4 brief. (Kemp Corr., ECF No. 8-18, PageID.1189-1190.)

with the cause of death; and (4) regarding Petitioner's character as an angry, unemployed, and frustrated drinker. Finally, Petitioner blames the trial court for denying him a fair trial by permitting the introduction of evidence regarding Petitioner's assault of Ms. Kemp (habeas issue V).

The Michigan Court of Appeals issued an unpublished opinion rejecting Petitioner's challenges on November 20, 2014. (Mich. Ct. App. Op., ECF No. 8-18, PageID.1045-1053.) Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court raising the same five issues. That court denied leave by order entered June 30, 2015. (Mich. Ord., ECF No. 8-19, PageID.1268.) Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, PageID.2.) Petitioner filed his habeas application in this Court on April 20, 2016.

## II. AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

A.    Admissibility of out-of-court statements
       (Habeas issues I and II)

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Petitioner contends that he was denied the right to confront Ms. Kemp and TK when the trial court admitted out-of-court statements from them. Specifically, the court permitted Dr. Sbalchiero to testify regarding the medical record within which she and other healthcare providers documented Ms. Kemp's statement that Petitioner beat BK (Trial Tr. III, ECF No. 8-11, PageID.741-749); and the court permitted foster parent Janina Teske to testify that TK told Teske that Petitioner had hurt her brother (Trial Tr. VII, ECF No. 8-15, PageID.878-883, 903-906). Petitioner relies on his state court appellate briefs to support his challenge to the introduction of the out-of-court statements. His briefs challenge the introduction of the evidence under the Michigan Rules of Evidence and the Confrontation Clause of the Sixth Amendment.

The admissibility of the statements under the Michigan Rules of Evidence is not cognizable on habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). The federal

courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Moreover, Petitioner cannot prevail on his claim that the admission of the statements violates the Michigan Rules of Evidence because the Michigan Court of Appeals has already ruled against him on that point. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).

Determining that the out-of-court statements are admissible under the Michigan Rules of Evidence, however, does not resolve whether the statements are admissible under the Confrontation Clause. The Michigan Court of Appeals considered that issue only with respect to the out-of-court statements of Ms. Kemp to the emergency room physician. *People v. Hill*, No. 317294, 2014 WL 6602570 at *1-2 (Mich. Ct. App. Nov. 20, 2014). The court of appeals concluded that there were two distinct parts to Ms. Kemp's out-of-court statements: first, Ms. Kemp's statement that she had been absent from the home the night before; and second, that Petitioner regularly abused BK. *Id.* at *2.

As to the first part, the court of appeals determined there was no Confrontation Clause issue because the testimony was not introduced to establish the truth of the matter asserted—that Ms. Kemp had been absent the night before—but to show she lied about where she spent the night, a lie which evidenced consciousness of guilt. *Id.* As to the second part, the court

of appeals determined that introduction of the statements may have created a Confrontation Clause issue; but, the court also concluded the error did not prejudice Petitioner because there was sufficient other evidence of Petitioner's guilt. *Id.*

The right to confront applies only to witnesses: "those who 'bear testimony.'" *Crawford v. Washington*, 541 U.S. 36, 51 (2004). Thus, not every out-of-court statement introduced at trial will implicate the protections of the Confrontation Clause. "The constitutional text . . . reflects an especially acute concern with a specific type of out-of-court statement[s:] . . . 'testimonial' statements" *Id*. The first question, therefore, is whether the out-of-court statements from Ms. Kemp and TK are "testimonial."

With respect to the first part of Ms. Kemp's out-of-court statement—that she was not present the night before—the Michigan Court of Appeals' conclusion that the statement is not barred by the Confrontation Clause is not inconsistent with clearly established federal law. In *Crawford*, the Supreme Court noted that "[t]he Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id*. at 59, n.9. But that principle starts with the presumption that the statement is testimonial. There is no clearly established federal law that supports Petitioner's position that the first or second parts of Ms. Kemp's out-of-court statements, or any part of TK's out-of-court statements are testimonial. Indeed, clearly established federal law says they are not.

Since *Crawford*, the Supreme Court has not hesitated to provide categorical guidance regarding whether statements are testimonial or not. The Court has indicated in at least four decisions that statements made for purposes of medical diagnosis or treatment or medical reports created for treatment purposes should not be considered testimonial. *See Bullcoming v. New Mexico*, 564 U.S. 647, 672 (2011) ("[T]his is not a case in which the State suggested an

alternate purpose, much less an alternate *primary* purpose, for the BAC report.  For example, the State has not claimed that the report was necessary to provide Bullcoming with medical treatment."); *Michigan v. Bryant*, 562 U.S. 344, 362 n.9 (2011) (listing "Statements for Purposes of Medical Diagnosis or Treatment" under Federal Rule of Evidence 803(4) as an example of statements made for a purpose other than prosecution that are, thus, not testimonial); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2 (2009) ("Other[ cases] are simply irrelevant, since they involved medical reports created for treatment purposes, which would not be testimonial under our decision today."); *Giles v. California*, 554 U.S. 353, 376 (2008) ("[O]nly testimonial statements are excluded by the Confrontation Clause. Statements . . . to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules . . . .").

The Supreme Court has also indicated that statements that fall within the definition of "excited utterances" are most likely not testimonial:

As our recent Confrontation Clause cases have explained, the existence of an "ongoing emergency" at the time of an encounter between an individual and the police is among the most important circumstances informing the "primary purpose" of an interrogation.  *See Davis*, 547 U.S., at 828–830, 126 S.Ct. 2266; *Crawford*, 541 U.S., at 65, 124 S.Ct. 1354. The existence of an ongoing emergency is relevant to determining the primary purpose of the interrogation because an emergency focuses the participants on something other than "prov[ing] past events potentially relevant to later criminal prosecution."  *Davis*, 547 U.S. at 822, 126 S.Ct. 2266. Rather, it focuses them on "end[ing] a threatening situation."  *Id.*, at 832, 126 S.Ct. 2266.  Implicit in *Davis* is the idea that because the prospect of fabrication in statements given for the primary purpose of resolving that emergency is presumably significantly diminished, the Confrontation Clause does not require such statements to be subject to the crucible of cross-examination.

This logic is not unlike that justifying the excited utterance exception in hearsay law.  Statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," Fed. Rule Evid. 803(2); *see also* Mich. Rule Evid. 803(2) (2010), are considered reliable because the declarant, in the excitement, presumably cannot form a falsehood.  *See Idaho* v. Wright, 497 U.S. 805, 820, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) ("The basis for the 'excited utterance' exception . . . is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or

10

confabulation . . . ”); 5 J. Weinstein & M. Berger, Weinstein's Federal Evidence
§ 803.04[1] (J. McLaughlin ed., 2d ed.2010) (same); Advisory Committee's Notes
on Fed. Rule Evid. 803(2), 28 U.S.C.App., p. 371 (same). An ongoing emergency
has a similar effect of focusing an individual's attention on responding to the
emergency.

*Bryant*, 562 U.S. at 361-362 (footnotes omitted). The key inquiry is whether the primary purpose
of the "interrogation" is "creating an out-of-court substitute for trial testimony." *Id*. at 358.

In *Bryant*, *Davis v. Washington*, 547 U.S. 813 (2006), and the case decided jointly
with *Davis*, *Hammon v. Indiana*, the Supreme Court explored the circumstances that might
evidence such an impermissible primary purpose. There is nothing in those three decisions, or any
Supreme Court decision, that suggests that an "excited utterance" made by a child to her primary
caregiver as part of an informal conversation would have a primary purpose of "creating an out-
of-court substitute for trial testimony." *Bryant*, 562 U.S. at 358. Indeed, the Court has moved in
the opposite direction. In *Ohio v. Clark*, 135 S. Ct. 2173 (2015), the Supreme Court considered
whether statements made by a child to someone other than the police, specifically preschool
teachers, regarding the identity of the child's abuser, were testimonial. The *Clark* Court concluded
the statements were not testimonial because "[t]here [was] no indication that the primary purpose
of the conversation was to gather evidence for Clark's prosecution. On the contrary, it is clear that
the first objective was to protect [the child]." *Id*. at 2181.

There is nothing in the record, and Petitioner offers no evidence, that the purpose
of Ms. Kemp's statements to the emergency room physician or the foster mother's conversation
with TK served the primary purpose of creating an out-of-court substitute for trial testimony.[3]

---

[3] The emergency room physician testified that she obtained the statements from Ms. Kemp as part of her inquiry into
the history of BK's illness for purposes of administering medical treatment. (Trial Tr. III, ECF NO. 8-11, PageID.744.)
The foster mother testified that she had pulled TK aside after the foster mother learned TK had scratched one of the
other children. (Trial Tr. VII, ECF No. 8-15, PageID.904.) The foster mother instructed TK that nobody hurts
anybody in that house. (*Id*.) TK volunteered that someone had hurt her brother. (*Id*.) When the foster mother asked
who that person was, TK responded "Marcus." (*Id*.)

Therefore, Petitioner has failed to show that the statements at issue were testimonial. Absent that showing, the statements do not run afoul of the Confrontation Clause. The state appellate court's conclusion that the admission of the statements was not constitutionally infirm is, therefore, neither contrary to, nor an unreasonable application of, clearly established federal law. Petitioner is not entitled to habeas relief on this issue.

        B.      <u>Admission of testimony regarding prior acts of domestic violence<br>(Habeas issue V)</u>

Petitioner next contends that his trial was rendered fundamentally unfair by the introduction of evidence of prior instances of abuse he directed at Ms. Kemp and the children. The Michigan courts concluded that the evidence was admissible as a matter of state evidentiary law. That determination is binding on this Court. The question remains, however, as to whether the introduction of such "prior bad acts" evidence might have been so unfairly prejudicial as to violate his due process rights. The Michigan Court of Appeals did not directly address this constitutional issue; however, it necessarily follows from the appellate court's conclusion that the evidence was not unfairly prejudicial that Petitioner's due process rights were not violated.

State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). The Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard.

There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of "other bad acts" evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Accordingly, Petitioner cannot demonstrate that the state courts' conclusion regarding the admissibility of "prior bad acts" evidence is contrary to, or an unreasonable application of, clearly established federal law. Therefore, he is not entitled to habeas relief on this issue.

C.    Prosecutorial misconduct
       (Habeas issue IV)

Petitioner contends that the prosecutor committed misconduct by:

1.    introducing testimony that Petitioner was unemployed and had problems with drinking and anger management;

2.    introducing testimony that Petitioner demonstrated anger toward Ms. Kemp;

3.    introducing testimony regarding prior injuries to the victim that were different than the injuries that resulted in the victim's death;

4.    introducing testimony that Ms. Kemp was a good mother trying to have a dream family until she met Petitioner; and,

13

5.    arguing that Petitioner had a problem with anger and frustration and that he took out his frustration on Ms. Kemp.

(Pet'r's Standard 4 Br., ECF No. 8-18, PageID.1175, 1180-1182.) Petitioner's description of the prosecutor's objectionable evidence and argument is not well-supported by the record.

The prosecutor's argument never referenced Petitioner's employment status, drinking, or anger management issues. Similarly, Petitioner's suggestion that the prosecutor relied on character evidence to demonstrate to the jury that Ms. Kemp was of good character and Petitioner was of bad character mischaracterizes the prosecutor's version of the events that led to BK's death. The theory actually presented by the prosecutor was accurately described by the Michigan Court of Appeals as follows:

> The evidence established that both defendant and Kemp were in the apartment they shared at the time of the murder. However, there was almost no direct evidence indicating whether the victim was beaten to death by defendant, Kemp, or both of them together. The prosecutor theorized that defendant and Kemp both beat the victim. To prove this theory, the prosecutor introduced extensive background evidence. The prosecutor introduced testimony portraying Kemp as a good mother before she met defendant. Thereafter, the prosecutor alleged, defendant exerted dominance over Kemp and her children through violence. Evidence was introduced that defendant had beaten Kemp. Witnesses also testified that defendant had said that he could beat the children if he wanted because he was the man of the house. The prosecutor introduced testimony suggesting that defendant was obsessed with having the victim and TK potty-trained. One witness testified that defendant and Kemp would force the victim to sit on a training potty for hours and that Kemp beat TK at defendant's direction after she had a related accident.

> Defendant essentially argues that the trial court erred in allowing the prosecutor to construct this narrative of the events leading to the charged crimes because it concerned the character of both he and Kemp and was violative of MRE 404(a) and (b) as well as irrelevant. At a hearing shortly before trial, the trial court found that the evidence was "highly probative and relevant for this jury to hear the Prosecution's theory that the way that this was allowed to have occurred is through certain acts and statements of the Defendant that created a situation of isolation and escalation." It concluded that the evidence was part of the res gestae of the murder. . . .

14

> "'It is the nature of things that an event often does not occur singly and independently, isolated from all others, but, instead, is connected with some antecedent event from which the fact or event in question follows as an effect from a cause.'" *Sholl*, 453 Mich at 742, quoting *People v. Delgado*, 404 Mich 76, 83; 273 NW2d 395 (1978). When such antecedent events involve criminal offenses, "'the principle that the jury is entitled to hear the 'complete story' ordinarily supports the admission of such evidence.'" *Sholl*, 453 Mich at 742, quoting *Delgado*, 404 Mich. at 83. Furthermore, as previously indicated, "it is essential that prosecutors and defendants be able to give the jury an intelligible presentation of the full context in which disputed events took place." *Id*. at 741.
>
> The trial court correctly concluded that the evidence at issue provided the full context of the criminal acts. The evidence of the atmosphere in the household was essential to the prosecutor's case, as it showed how the child's death could occur. Under the principle that the jury was entitled to hear the "complete story," the prior acts of violence against both Kemp and the children were admissible.

*Hill*, 2014 WL6602570, at *6-7. The court of appeals' description of the prosecutor's theory and argument is reasonable on the record before the Court. Petitioner's is not.

However one chooses to describe the prosecutor's conduct, for relief to be granted, that conduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). When a petitioner makes a claim of prosecutorial misconduct, "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The Supreme Court has emphasized a series of factors to be evaluated in determining whether prosecutorial misconduct so infected the trial as to amount to a violation of due process: (1) whether the comments were isolated or pervasive, (2) whether they were deliberately or accidentally placed before the jury, (3) the degree to which the remarks had a tendency to mislead and prejudice the defendant, (4) whether the prosecutor manipulated or misstated the evidence, (5) the strength of the overall proof establishing guilt, (6) whether the remarks were objected to by counsel and (7) whether a curative instruction was given by the court. *See Darden*, 477 U.S. at 182-83; *United States v. Young*, 470

U.S. 1, 12-13 (1985); *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

Petitioner has failed to demonstrate that the prosecutor committed any misconduct at all. All of the evidence which Petitioner contends the prosecutor improperly admitted was evidence that the trial court determined was admissible following a hearing on April 17, 2013. (Mot. Hr'g Tr., ECF No. 8-8.) The Michigan Court of Appeals affirmed that determination. *Hill*, 2014 WL6602570, at *6-7. "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge . . . ." *Cristini v. McKee*, 526 F.3d 888, 889 (6th Cir. 2008). Thus, there was no misconduct when the prosecutor sought to admit evidence that the trial judge had determined to be admissible before trial.

Similarly, it is not misconduct for a prosecutor to base his arguments on properly admitted evidence or inferences to be drawn from that evidence. "[T]he prosecutor may 'summarize the evidence and comment on its quantitative and qualitative significance.'" *Byrd v. Collins*, 209 F.3d 486, 535 n.41 (6th Cir. 2000) (quoting *United States v. Bond*, 22 F.3d 662, 669 (6th Cir. 1994)). Moreover, "prosecutors 'must be given leeway to argue reasonable inferences from the evidence.'" *Byrd*, 209 F.3d at 535 (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)). The prosecutor did nothing more than that here.

Petitioner has failed to show that the Michigan Court of Appeals' rejection of his prosecutorial misconduct claims runs afoul of clearly established federal law. Moreover, the factual determinations upon which the appellate court based its conclusions are well-supported in the record. Petitioner is not entitled to habeas relief on his claim of prosecutorial misconduct.

D.  Ineffective assistance of trial counsel
(Habeas issue III)

Petitioner finally shifts the focus to his own counsel, contending that his trial counsel rendered ineffective assistance in several ways:  (1) counsel failed to investigate or introduce evidence regarding a handwritten confession purportedly sent by Mercedes Kemp to Judge Joyce Draganchuk during September of 2012; (2) counsel stipulated to the admission of Petitioner's statement to the investigators; and (3) counsel failed to object to photographs and exhibits regarding injuries to Ms. Kemp, purportedly caused by Petitioner.  (Pet'r's Standard 4 Br., ECF No. 8-18, PageID.1169-1174, 1188-1190.)

1.  Ms. Kemp's confession

The handwritten letter, purportedly authored by Ms. Kemp and sent to Judge Draganchuk, took full responsibility for the abuse and death of BK.  (*Id*., PageID.1188-1190) ("I Mercedes Kemp is admitting to killing my son.").  The Michigan Court of Appeals, relying on the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), concluded that Petitioner had failed to develop the record to show that counsel was ineffective for not investigating or introducing the letter:

> First, defendant argues that Kemp wrote a letter confessing to her son's murder.  Defendant claims that she sent the letter to the trial court, which forwarded the letter to the prosecutor, who forwarded the letter to defense counsel.  Defendant argues that his trial counsel was ineffective for failing to move to quash the indictment or investigate the letter.  While defendant has attached the letter and correspondence regarding it as an exhibit to his Standard 4 brief, there is no indication in the lower court record of what, if anything, transpired concerning the letter, prior to trial.  "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel."  *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).  As our Supreme Court explained in *Ginther*, 390 Mich at 442-443, quoting *People v Jelks*, 33 Mich App 425, 431; 190 NW2d 294 (1971):
>
> > "A convicted person who attacks the adequacy of the representation he received at his trial must prove his claim.  To the extent his claim depends

> on facts not of record, it is incumbent on him to make a testimonial record at the trial court level in connection with a motion for a new trial which evidentially supports his claim and which excludes reasonable hypotheses consistent with the view that his trial lawyer represented him adequately."

Here, without a record, there is no basis for determining that defense counsel was ineffective for not taking the actions that defendant claims he should have taken. It is possible, for example, that the confession was discredited before trial. It is also possible that if Kemp wrote the statement, that she later retracted it. In short, there is nothing to indicate that counsel did, in fact, fail to investigate the letter. Consequently, defendant has failed to establish the factual predicate for his claim.

Defendant additionally argues that counsel should have called Kemp "to testify to whether she actually wrote the letter and if it was true or not." Kemp was convicted on March 1, 2013, before defendant's trial began. She thereafter appealed her conviction, albeit a short time after defendant was convicted. However, a defendant retains her right against self-incrimination when her conviction is pending on appeal, that is, until the case has been prosecuted to a final conclusion. *People v Giacalone*, 399 Mich 642, 644; 250 NW2d 492 (1977); *People v Den Uyl*, 318 Mich 645; 29 NW2d 284 (1947) (emphasis added). Counsel cannot be faulted for failing to call Kemp, when it appears likely she would have invoked her privilege against self-incrimination if called. See *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998) (counsel cannot be ineffective for declining to take a futile action).

*Hill*, 2014 WL 6602570, at *5.

The court of appeals identified the correct standard. In *Strickland*, 466 U.S. at 687-88, the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id*. (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding

that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id*. at 691.

It is disingenuous for Petitioner to suggest that his counsel blithely ignored the "confession." By the time of Petitioner's trial, it was readily apparent that Ms. Kemp would not stand by that confession, if, indeed, it were ever her confession at all. Ms. Kemp was tried immediately before Petitioner. Ms. Kemp took the stand. Her testimony is recounted in *People v. Kemp*, No. 316254, 2014 WL 6778941 (Mich. Ct. App. Dec. 2, 2014), by the same three-judge panel that affirmed Petitioner's conviction two weeks before issuing the *Kemp* opinion. Her testimony did not favor Petitioner in any way. Petitioner and his counsel were aware of that fact. Before trial commenced, Petitioner specifically waived his right to delay his own trial for the purpose of obtaining the transcripts of the testimony from Ms. Kemp's trial. (Trial Tr. I, ECF No. 8-9, PageID.629-630.)

Moreover, whether or not Ms. Kemp's testimony might prove favorable, Petitioner's counsel recognized that he would not be able to compel it. (Mot. Hr'g Tr., ECF No. 8-8, PageID.617) ("The only way to explain these situations away . . . is to bring in Ms. Kemp, and that's not going to happen and we know that's not going to happen. She's not going to come in and testify."); (Def.'s Objection to 404B Evidence, ECF No. 9-3, PageID.1422) ("[I]t would unduly shift the burden onto Mr. Hill to testify and try to explain the actions of Ms. Kemp who is not available."). The Michigan courts have held that a lawyer may not knowingly call a witness knowing that he (or she) will claim a valid privilege not to testify. *People v. Giacalone*, 250

N.W.2d 492, 494-95 (Mich. 1977).[4] Counsel's unequivocal statement that Ms. Kemp would not be testifying at Petitioner's trial indicates that he was aware she intended to assert the privilege.

Even if Petitioner's counsel did not know whether Ms. Kemp would claim the privilege or knew that she would not, refusing to call her to the stand would have been patently reasonable. It is most likely the anticipated detrimental impact of Ms. Kemp's anticipated testimony that prompted Petitioner's counsel to move for separate trials. (Docket Sheet, ECF No. 8-1, PageID.122.) The only possible benefit of calling Ms. Kemp would be the speculative hope that she would provide testimony consistent with a printed note she allegedly prepared months earlier—testimony that would be easily impeached as contrary to her sworn testimony offered only days before, rendering either the current or prior testimony perjurious, and dealing a fatal blow to her chances of prevailing on appeal. It appears that putting Ms. Kemp on the stand would have been the unreasonable course of action.

Neither the content of Ms. Kemp's testimony in her own trial, the extent of Petitioner's counsel's investigation of the confession, nor the confession itself were part of the trial court record. That was the reason the court of appeals denied this ineffective assistance challenge: there was no record to support the premise of Petitioner's argument—that the confession and/or Ms. Kemp's testimony would have worked to Petitioner's benefit in his trial.

In *Ceasor v. Ocwieja*, 655 F. App'x 263 (6th Cir. 2016), the court described the procedure Petitioner should have followed to properly develop a record regarding counsel's failure to investigate the "confession" or call Ms. Kemp to testify:

---

[4] Ms. Kemp's waiver of the privilege by testifying in her own trial would not waive the privilege in the criminal proceedings against Petitioner. *Cadle Co. II Inc. v. Lakeside Machine Inc.*, No. 290426, 2009 WL 3401151, at *8 (Mich. Ct. App., Oct. 22, 2009) ("[A] party's invocation of the Fifth Amendment privilege against self-incrimination does not carry over from one proceeding to another separate distinct proceeding; rather, the privilege must be invoked or waived in each separate proceeding or forum."). Moreover, Ms. Kemp could claim the privilege even though she had already been convicted because her case was still on appeal. *Giacalone*, 250 N.W.2d at 494 n.3.

> The Michigan Supreme Court has held that "[i]f a convicted defendant believes that his attorney's representation was below an objective standard of reasonableness, the appropriate procedure is to seek a *Ginther* hearing." *People v. Smith*, 456 Mich. 543, 581 N.W.2d 654, 660 (1998). "The purpose of a *Ginther* hearing is to allow a defendant to establish facts or evidence to assist in making his claims." *Parker*, 2004 WL 1392292, at *6 (citing *Ginther*, 212 N.W.2d at 925). "A defendant is not entitled to a *Ginther* hearing as a matter of right," but instead "must demonstrate that there are factual issues regarding his or her counsel's performance that require further inquiry." *People v. Randolph*, No. 293999, 2010 WL 5383526, at *3 (Mich. Ct. App. Dec. 28, 2010).

*Ceasor*, 655 F. App'x at 278.[5] Because Petitioner failed to follow proper procedure, the state appellate court limited its consideration of his claim:

> To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). *People v. Armisted*, 295 Mich App 32, 46; 811 NW2d 47 (2011). Nothing in the record indicates that defendant moved for a new trial or for an evidentiary hearing. Thus, this issue is unpreserved. Unpreserved claims of ineffective assistance of counsel are reviewed for errors that are apparent on the record. *Id*.

*Hill*, 2004 WL 6602570, at *4-5. For an error to be "apparent on the record" it must satisfy Michigan's plain error standard. *People v. Moreno*, No. 264057, 2006 WL 3755197, at *1 (Mich. Ct. App. Dec. 21, 2006) (citing *People v. Carines*, 597 N.W.2d 130, 138-39 (Mich. 1999)).

When a procedural failure limits the state appellate court's review, the federal courts are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate"

---

[5] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record. For that reason, evidentiary hearings regarding ineffective assistance of counsel are typically referred to as *Ginther* hearings.

state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

The Michigan Court of Appeals' opinion clearly explains that Petitioner failed to comply with a state procedural rule. Because of Petitioner's failure, the appellate court would not consider Petitioners' allegation of error for any error not apparent on the record. The fact that the state court reviewed the record for plain error does not waive Petitioner's procedural default. In this circuit, "plain error review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citations omitted); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000); *see also Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998) (state court's alternative holding on the merits does not require federal court to disregard the procedural bar); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (same); *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989) (claim is defaulted even where the state court may excuse the default for "manifest injustice"); *Federico v. Yukins*, No. 93-2424, 1994 WL 601408, at *3-*4 (6th Cir. Nov. 2, 1994) (same, for "miscarriage of justice").

Because Petitioner procedurally defaulted his claim in state court, he must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-

52.  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536.  A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner has neither alleged nor shown cause for his failure to seek a *Ginther* hearing.  Therefore, prejudice need not be considered.  Petitioner also has not demonstrated that manifest injustice would result because he has not made a colorable claim of innocence; he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent.  *Schlup*, 513 U.S. at 322 (citing *Murray*, 477 U.S. at 495).  Accordingly, the procedural default that limited the state appellate court to plain error review of Petitioner's claim bars this Court's consideration of the claim.

## 2.  Petitioner's statement

Petitioner next complains that his counsel inexplicably stipulated to the admission of Petitioner's statement to the officers investigating BK's abuse and murder.  The Michigan Court of Appeals flatly rejected Petitioner's claim:

> Defendant offers no authority to establish that this was a principled basis for an objection.  The statements were admissible as admissions of a party opponent under MRE 801(d)(2).  Thus, it appears that any objection by defense counsel would have been meritless, and his failure to raise a meritless objection did not constitute ineffective assistance.  *People v Torres (On Remand)*, 222 Mich App 411, 425; 564 NW2d 149 (1997).

*Hill*, 2014 WL 6602570 at *6.  Although relying on state authority, the appellate court's determination is entirely consistent with clearly established federal law.  Counsel's failure to raise a meritless issue does not constitute ineffective assistance of counsel.  *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement, 'counsel cannot be ineffective for a

failure to raise an issue that lacks merit.'") "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

### 3. Photographs regarding Petitioner's abuse of Ms. Kemp

Petitioner's last challenge to his trial counsel's effectiveness is based on his contention that the admission of any evidence regarding Petitioner's abuse of Ms. Kemp was improper. *See* § II B, *supra*. Petitioner lost that battle before the trial began. (Mot. Hr'g Tr., ECF No. 8-8.) But, Petitioner did not lose that battle because counsel failed to object. Petitioner lost that battle because the judge overruled Petitioner's counsel's objections. The trial court stated that such evidence would be "admissible under MCL 768.27b as that is an act of domestic violence being committed against an individual that the Defendant resided with and it's being raised or brought in a criminal action where the Defendant is accused of an offense involving domestic violence." (*Id.*, PageID.623.) Petitioner's challenge, therefore, is without merit. The Michigan Court of Appeals' rejection of Petitioner's claim is not contrary to, nor is it an unreasonable application of, *Strickland*.

### <u>Certificate of Appealability</u>

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken. 28 U.S.C. § 2253(c)(1). A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated: December 15, 2017                          /s/ Ellen S. Carmody
                                                 Ellen S. Carmody
                                                 United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).